**In re Anonymous No. 23 D.B. 80**

Disciplinary Board Docket no. 23 D.B. 80.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania

KRAWITZ, *Board Member,* May 27, 1981—Pursuant to Pa.R.D.E. 208(d), the Disciplinary Board of the Supreme Court of Pennsylvania (board) submits its finding and recommendations to your Honorable Court with respect to the above petition for discipline.

## I. HISTORY OF PROCEEDINGS

On May 5, 1980, the Office of Disciplinary Counsel charged Attorney [   ] (respondent) with acts of misconduct as follows:

1. D.R. 1-102(A)(4) dealing with conduct involving dishonesty, fraud, deceit, or misrepresentation;

2. D.R. 1-102(A)(6) dealing with conduct that adversely reflects on an attorney's fitness to practice law;

3. D.R. 6-101(A)(3) dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

4. D.R. 6-102(A) dealing with an attorney's attempt to exonerate himself or limit his liability to his client for the attorney's personal malpractice;

5. D.R. 7-101(A)(1) dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

6. D.R. 7-101(A)(2) dealing with an attorney's intentional failure to carry out a contract of employment entered into with a client for professional services; and,

7. D.R. 7-101(A)(3) dealing with an attorney's intentional prejudicing or damaging his client during the course of the professional relationship.

After hearing, the hearing committee found that respondent was guilty of neglecting a legal matter and guilty of dishonesty, deceit, misrepresentation and engaging in conduct adversely reflecting on respondent's fitness to practice law. The committee recommended a six month suspension and a two year period of probation to run concurrent with suspension. Exceptions were filed by the Office of Disciplinary Counsel with oral argument requested and a panel was designated consisting of Sidney L. Krawitz, Esq., Chairman, Mrs. Nancy Neuman,

and Charles Henry, Esq., which said panel heard oral argument on March 10, 1981 and rejected the recommendation of the hearing committee and makes the following recommendation to the Supreme Court.

## II. FINDINGS OF FACT

1. That respondent, [ ] Esq., at the time of the alleged misconduct, was an attorney of law duly admitted to practice before the Supreme Court of Pennsylvania and had been a general practitioner and a trial lawyer for more than 17 years and established his own law firm in 1964.

2. The facts of this case relateto two charges as follows:

A. Charge I ([A] Estate)

On July 11, 1976, [A] died a resident of [ ] County leaving a will dated December 31, 1964, and a codicil, in the form of a personal letter, dated June 26, 1976. A few days after [A]'s death, his sister-in-law (hereinafter A's sister-in-law) retained respondent to represent her as executrix of the [A] Estate. Among the few assets contained in the estate were a cottage property on [ ] Road in [ ] Lake and a 1973 Ford station wagon. According to the terms of the codicil, the cottage property was devised to a minor by the name of [B] and the car was to go to [B]'s father, [ ]. At the time [A's sister-in-law] retained respondent, she gave him a copy of the codicil and informed him the original thereof was with the person to whom the letter was addressed. However, no attempts were made by respondent or anyone else to obtain the original codicil until September of 1979, more than three years after [A's] death.

In March of 1978, respondent had given the [A] Estate file to Attorney [C] to prepare certain papers

in typed form. When Attorney [C] received the file, it contained prepared rough drafts of probate documents, including a petition for probate, bond for nonresident executor, oath for nonsubscribing Witness, oath of executor, application for charitable exemption, and an inventory for the Pennsylvania Inheritance Tax Return.

While respondent was retained to represent [A's sister-in-law], he never caused the will or codicil of [A] to be probated and never had [A's sister-in-law] appointed executrix of the estate. He failed to do this despite repeated telephone calls from [A's sister-in-law]—over 100 according to her testimony—and numerous letters from [A's sister-in-law] and [D], Esq., counsel for [B's father]. While respondent did meet with [A's sister-in-law] on at least two occasions and did return some of her phone calls, respondent always assured her "things were being taken care of," which was not correct since respondent had not even raised an estate for [A].

In February of 1979, totally frustrated by respondent's inaction, [A's sister-in-law], by letter, discharged respondent as her attorney and directed him to turn over the estate file to [D] Esq. Not only did respondent fail to reply to [A's sister-in-law]'s letter, he did not turn over the file to [D] or to [A's sister-in-law].

Respondent spoke with [D] who advised respondent that he did not want the file and would not accept it.

[A's sister-in-law], at the reluctant suggestion of [D] filed her complaint with the Disciplinary Board in April of 1979. By letter dated September 6, 1979, petitioner, Office of Disciplinary Counsel, advised respondent of [A's sister-in-law]'s complaint. It was not until after respondent was advised of [A's sister-in-law]'s complaint that he took some defini-

tive action to raise and begin the administration of the [A] Estate.

No inheritance tax was due. Respondent, from his own funds, on or about September 1, 1978, paid property taxes in the amount of $215.93, for the period through 1977, on the property which was part of the estate, which property was not exposed to tax sale. Further, respondent paid from his own funds the balance due on the funeral bill in the amount of $427. Attorney [C] was paid $150 by respondent for doing work on the estate.

The will and codicil were not presented for probate until September 14, 1979, at which time [A's sister-in-law] was appointed executrix. At that time, with [A's sister-in-law]'s consent, Attorney [C] took over for respondent as counsel for the estate. Thereafter, it took an additional year to finally settle this estate.

B. *Charge II* ([E])

On or about October 14, 1972, [E] of [   ] County, died as a result of injuries he sustained when struck by an automobile driven by [F], who was insured by [G] Insurance Company. Within about two weeks of [E]'s death, respondent was retained by decedent's widow, [   ], and son, [   ], to initiate and prosecute a wrongful death and/or survival action against [F].

As part of respondent's investigation of the [E] matter, he went to the scene of the accident during the nighttime hours and during the day on a couple of occasions. He talked to people who lived in the area and went into the bar where [E] was coming from before he was hit, met with the coroner's office and interviewed and talked to the police department that investigated the accident. He further secured copies of the coroner's report.

Respondent failed to initiate any litigation on behalf of [E's widow and son] and any cause of action

they had against [F] would now be barred by the applicable statutes of limitation. On numerous occasions since being retained, respondent misrepresented to [E's widow and son] that he had initiated litigation on their behalf and that he was negotiating a settlement with [G] Insurance Company when he, in fact, had not done so. During cross-examination, respondent testified he believed he began lying to [E's widow and son] in 1976 or 1977.

On or about August 10, 1978, almost six years after [E]'s death, respondent misrepresented to [E's widow and son] that he had negotiated a settlement offer from [G] Insurance Company in the total amount of $10,500. At that time, respondent mailed [E's widow] his personal check for $7,875 along with a purported settlement sheet which indicated that the total settlement was $10,500, that respondent's legal fees were $2,650 and that the net settlement payable to [E's widow] was $7,875. Thereafter, [E's widow] negotiated the check for $7,875, but did not execute or return the settlement sheet as respondent had requested.

Since August of 1978, both [E's widow] and her son have attempted to obtain more information concerning the purported settlement from respondent; however, he ignored their inquiries.

Respondent never informed [E's widow and son] that he failed to initiate any action on their behalf, that he never negotiated any settlement with [G] Insurance Company, that he fabricated the purported $10,500 settlement or that they may have a cause of action against him for malpractice.

## III. RESPONDENT'S PRIOR DISCIPLINARY RECORD

After the presentation of evidence in the matter

of [A] Estate (Charge I), respondent's counsel stipulated that Disciplinary Counsel had established at least one violation of the Disciplinary Rules whereupon Disciplinary Counsel introduced documentary evidence of respondent's prior disciplinary record.

On July 19, 1973 and November 16, 1973, the Office of Disciplinary Counsel filed petitions for discipline with the Disciplinary Board of Pennsylvania against respondent. One count involved the dilatory settling of the Estate of [H], which matter arose in 1970. Respondent was cited with these charges:

(1) Incompetent representation of [I] in an action of divorce;

(2) Incompetent representation of [J] before the Civil Service Commission; and

(3) Incompetent representation of [K] in a real estate transaction.

The [I] matter arose in 1970, as did the matter involving [J]. The matter of [K] arose in 1971 and early 1972. Hearing committee conducted hearings on the above matters on January 23, 1974, and February 8, 1974. With respect to the matters involving [H], [I] and [K], the hearing committee found respondent's conduct violative of D.R. 6-101(A)(3) of the Code of Professional Responsibility. The hearing committee recommended dismissal of the [J] matter, but recommended private reprimand in the [H], [I] and [K] matters.

On September 20, 1974, respondent was privately reprimanded by the Disciplinary Board for the above three separate violations of D.R. 6-101(A)(3), to wit: neglect of an estate for a period of about two and one-half years; neglect of a divorce action for about three years; and, neglect of a real estate matter.

The hearing committee who heard the charges concerning the divorce case made two conclusions of law relative to respondent's character; namely:

"2. That Respondent, [   ], attempted to mislead Complainant into believing he had secured a divorce, although the files had not been presented to the proper court for approval and signature.

"3. That Respondent, [   ], without any reason except gross neglect, failed to perform a legal matter entrusted to him and attempted to conceal his inadequacy by the substitution of false documents."

There is a similarity between the [I] matter and the charge in the [E] complaint (Charge II). At the time (September 20, 1974) that respondent was reprimanded, he was neglecting his professional responsibilities to file an action on [E's widow and son]'s behalf for about two years. While the one-year statute of limitations had already run on [E's widow and son's] wrongful death action, the two-year statute of limitation on the survival action would not run until on or about October 14, 1974.

On November 20, 1975, petition was filed by the Office of Disciplinary Counsel with the Secretary of the Disciplinary Board of Pennsylvania. The petition charged respondent with six counts of misconduct. Charge one dealing with a personal injury to one [L], arose in August, 1969. Charge two deals with a personal injury to one [M], which cause of action arose in early 1970 when [M] retained respondent. Charge three deals with [N]. Respondent became involved in this matter in June, 1968. Charge four, regarding [O], arose in July, 1965. Charge five, dealing with [P], arose in June, 1970. Finally, Charge six, dealing with [Q], arose in January, 1969.

The record reveals that of the six charges, two complaints were received subsequent to February 8, 1974, the date of the first board hearing. Specifically, the [P] complaint was received by the Disciplinary Board on July, 1974, and the [N] complaint was received on August 6, 1974. The hearing committee filed its report and recommendation on May 14, 1974 and a private reprimand was administered to respondent on Friday, September 20, 1974. Subsequent to that date, the remaining four charges were filed with the board and ultimately on November 20, 1975, petition was filed.

The above illustrates that all of the charges arose during the same time period as the charges in the first petition. There is no record of charges or incompetency which arose subsequent to the private reprimand of September 1974, with the exception of the two matters now before the board, and the [E] complaint represents one of those cases from the time period of 1972.

On April 14, 1977, respondent was publicly censured by Chief Justice Michael J. Eagen for multiple counts of violating, inter alia, D.R. 1-102(A)(4) and D.R. 6-101(A)(3).

In those multiple charges, respondent's inattention to his professional responsibilities caused the statute of limitations to run in five personal injury actions he was to prosecute on behalf of various clients. Respondent never advised his clients of his derelictions, failed to return numerous phone calls, did not keep appointments, and, in some cases, misrepresented to his clients that he had taken certain actions when he, in fact, had not. In their report and recommendation to the Supreme Court, the Disciplinary Board said:

"We totally reject the testimony of respondent in attempting to excuse the irresponsible behavior.

There is no explanation for such complete dereliction of duty. Respondent not only allowed his clients' causes of action to extinguish, but did so during a period when he was constantly reminded that said causes existed. His total disregard of his clients as manifested by his active course of non-communication only compounds the unethical conduct. It can only leave a bitter feeling with his clients and adversely affect their regard for the legal profession. The lack of communication in not making his clients aware of his wrongdoings — missing the statute of limitations — only conveys to the board and the hearing committee the possibility of a flaw in respondent's character.. . ."

While the hearing committee in that case recommended a suspension of three months as the appropriate discipline to impose upon respondent for his multiple violations of the Disciplinary Rules, the Disciplinary Board recommended only the imposition of a public censure. The board's more lenient recommendation was based upon their belief that respondent, after receiving the private reprimand, made a "good faith attempt to ascribe to the wishes of the Disciplinary Board" and "put his house in order." In their report, the board went on to say:

"This board cannot overlook the negligent conduct of respondent and does find ample reason for public discipline at this time. But the Board feels that it must temper the hearing committee's recommendation of three months' suspension. Respondent has altered his office priorities and improved his attitude towards the responsibility owed to his clients and his approach to his chosen profession. He has apparently taken the steps necessary to restore him to the ranks of his profession where he will bring credit to himself and his vocation. He

should consider himself fortunate that he has been given an opportunity to show the improvement. This improvement must be considered as mitigating circumstances to respondent's credit."

After noting that the Supreme Court had "serious reservations about (respondent's) character" and that they "considered very seriously revoking (respondent's) license," Chief Justice Eagen, in administering the public censure, said:

"But the Board itself tells us you have made a serious effort to right the wrongs you have committed; that you have made a determined effort to put your house in order, and that at least in the last two years your conduct has been beyond reproach."

At the time o the public censure, respondent had already neglected the [E] matter for a period of about four and one-half years and had misrepresented to [E's widow and son] that he had initiated an action on their behalf when he had not. In addition, approximately nine months had expired from the date of death of the decedent in the [A] Estate.

## IV. RESPONDENT'S REPUTATION

Respondent offered in evidence 26 letters attesting to his good character. Four of the letters were from judges and they were excluded because they violate the provisions of Pennsylvania Rules of Judicial Administration No. 1701(d). Quoting from the opinion of the hearing board, we adopt the following:

"Respondent appears to be an honest, dedicated and hard working criminal lawyer who is not motivated by money, prestige or publicity, but rather approaches his cases as a personal challenge in the preparation, investigation and trial. It is noted that the thrust of the positive recommendations deal

with the Respondent as a criminal lawyer and not necessarily as a lawyer involved in a heavy workload of civil cases. It is noted that the previous disciplinary proceedings, including the private reprimand in 1974 and the public censure in 1977, involved civil matters. It appears that Respondent had over extended his practice even in light of having other attorneys help him expedite his workload, thereby creating the negligence involved in the two matters currently before this Committee."

## V. DISCUSSION

The panel had no difficulty in accepting the following report of the hearing committee except as to the appropriate discipline in relation to the aforementioned detailed facts.

The panel was particularly troubled with the conduct of respondent and particularly in light of his prior disciplinary record.

We direct to the attention of the court, the evidence in the instant proceeding and in the two prior disciplinary matters leaves no doubt that respondent failed to carry out an attorney's basic responsibilities and duties owed to his client and that respondent completely disregarded the legal matters entrusted to him and violated the provision of D.R. 6-101(A)(3) prohibiting the neglect of legal matters and violated the provision D.R. 1-102(A)(4) prohibiting conduct involving dishonesty, deceit and misrepresentation and violated D.R. 1-102(A)(6) prohibiting conduct which adversely reflects on an attorney's fitness to practice law.

Respondent failed to excuse his irresponsible behavior in these legal matters and failed to give a proper explanation for his complete dereliction of duty. His total disregard of the rights of his clients was emphasized by a continued and active course

ot lack of communication and neglect which caused his clients damage, created bitterness and adversary effects to his clients in their regard for the legal profession. From the record, it appears that his neglect in relation to matters involving the statutes of limitation and his lack of communication indicates his incompetency to practice law and the possibility of great harm presently and in the future as a result of his wrongdoing. The pattern of conduct of respondent in the current matters before the board and in the matters involved in respondent's prior disciplinary record, directs our attention to the gravity of this matter and the necessity to protect the public from future harm. In rendering a public censure, the then Chief Justice Michael J. Eagen addressed respondent on April 4, 1977 and said in part:

"After this Court reviewed this record, we had serious reservations about your basic character, whether or not you were the sound, solid type of individual who should be a member of the Bar. We considered very seriously revoking your license . . . but we want to impress upon you and other members of the Bar, that we are not going to condone such conduct in the future."

The evidence clearly establishes that respondent is presently unfit to practice law from the standpoint of protecting the public and the courts and that his conduct reflects on his ability to practice law.

## VI.  HEARING COMMITTEE ACTION

The hearing committee recommended that respondent be suspended for six months with a two year period of probation to run concurrent with the suspension.

## VII. DISCIPLINARY BOARD RECOMMENDATION

The Disciplinary Board did not concur with the findings of the hearing committee as heretofore set forth. The Disciplinary Board adopts the hearing board's findings of fact and conclusion of law. The board felt, however, that the magnitude of respondent's action in the matter and the prior disciplinary record of respondent required that the recommendations of the hearing committee be rejected. Accordingly, the Disciplinary Board under the circumstances of the case recommends that a 30 month suspension from the practice of law is mandated and that the present conduct and past conduct of respondent indicates this to be a minimum suspension. The board noted the twofold purpose of the Disciplinary System, to protect the public and the courts from those unfit to function as attorneys and to maintain the confidence of the public and the courts in the legal profession.

All members of the board present voted unanimously to accept the recommendation of the panel. Herbert J. Johnson, Jr., Esq., Raymond Pearlstine, Esq., Pasco L. Schiavo, Esq. and John M. Elliott, Esq., were absent.

## ORDER

ROBERTS, J., And now, June 22, 1981, the recommendation of the Disciplinary Board dated May 27, 1981, is accepted; and it is ordered that [respondent] be and he is suspended from the practice of law in the Supreme Court and in all the courts under its supervisory jurisdiction for the period of 30 months, and he shall comply with all the provisions of Pa.R.D.E. 217.